SIERRA CLUB; Richard Sextro; Michael H. Shuman, Plaintiffs,

v.

Anne GORSUCH, in her official capacity as Administrator of the United States Environmental Protection Agency; and the Environmental Protection Agency, Defendants,

and

Alabama Power Company, et al.; the Fertilizer Institute, et al.; and American Mining Congress, Defendant-Intervenors.

No. C 81 2436 WTS.

United States District Court, N.D. California.

Sept. 30, 1982.

Roger Beers, Kathryn Burkett Dickson, Beers & Dickson, San Francisco, Cal., for plaintiffs.

Francis Boone, Asst. U.S. Atty., San Francisco, Cal., Dean K. Dunsmore, Environmental Defense Section, Land and Natural Resources Division, U.S. Dept. of Justice, Washington, D.C., for defendants EPA and Gorsuch.

Donald P. Irwin, Lee B. Zeugin, Hunton & Williams, Richmond, Va., E. Milton Farley, III, Hunton & Williams, Washington, D.C., Robert A. Goodin, Armour, St. John, Wilcox & Goodin, San Francisco, Cal., for Alabama Power, et al.

Charles G. Miller, McKenna, Conner & Cuneo, San Francisco, Cal., for Fertilizer Institute.

Hamel, Park, McCabe & Saunders, Edward A. McCabe, Anthony J. Thompson, Robert W. Frantz, Theodore A. Howard, Washington, D.C., Feeney & Sparks, Thomas E. Feeney, David W. Rudy, San Francisco, Cal., for American Mining Congress.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is a civil action under the Clean Air Act ("Act"), 42 U.S.C. § 7401 et seq. Plaintiffs Sierra Club, an environmental organization, and two individuals, bring this action pursuant to the citizens' suit provision of the Act (42 U.S.C. § 7604), alleging that the Environmental Protection Agency ("EPA" or "Agency") has failed to perform its duty under the Act with respect to establishing national emission standards for radionuclides—a hazardous air pollutant. Plaintiffs seek declaratory and injunctive relief.[1]

Section 7412(b)(1)(A) and (B) of the Act provide in pertinent part as follows:

The Administrator shall ... publish (and shall from time to time thereafter revise) a list which includes each hazardous air pollutant for which he intends to establish an emission standard under this section.

Within 180 days after the inclusion of any air pollutant in such list, the Administrator shall publish proposed regulations establishing emission standards for such pollutant together with a notice of a public hearing within thirty days. Not later than 180 days after such publication, the Administrator shall prescribe an emission standard for such pollutant, unless he finds, on the basis of information presented at such hearings, that such pollutant is clearly not a hazardous air pollutant.

The evidentiary record shows without dispute that on November 8, 1979, the EPA listed radionuclides as a hazardous air pollutant. However, the Agency has failed to publish proposed regulations establishing emission standards for the listed pollutant within 180 days after such listing as required by the Act. No such proposed regulations have been published in the nearly three years since the date of the listing.

1. The court has permitted the intervention of (1) a group comprised of eighty six (86) utility companies (Alabama Power Company, et al.); (2) the Fertilizer Institute, Inc., and the Florida Phosphate Council, two non-profit trade associ-ations; and (3) the American Mining Congress ("AMC"), an industrial trade association representing the producers of most of the nation's coal, metals, and industrial and agricultural minerals.

The record also contains evidentiary material presented by the EPA and the intervenors tending to explain this long delay upon the ground that compliance with the statute is difficult or impossible, because EPA needs additional time to study radionuclides in order to issue the proposed regulations; and, further, because the EPA is constrained by claimed limitations on staff and budget.

On March 8, 1982, this court granted plaintiffs' motion for partial summary judgment and ruled that the EPA had failed to perform its mandatory statutory duty to issue proposed radionuclide emission standards within 180 days of listing them as a hazardous air pollutant. The EPA was ordered to present to the Court a proposal for compliance with Section 7412 and to discuss the proposal with all other parties; and, further, to notify the court whether the proposal could be unanimously approved.

The EPA has presented its proposal for compliance, alleging that it will need until as late as 1989—more than nine years after the statutory 180 day deadline—to issue proposed regulations for "some" emission sources.

Plaintiffs object to any such extension of time for compliance and request that the court enter an Order requiring the EPA to issue its proposed regulation within 180 days from the date of such Order. It appearing that no agreement can be reached by the parties, the case is again before the court on plaintiffs' motion asking the Court to fix a schedule for compliance with Section 7412.

The first issue is whether, and, if so, to what extent, this Court can excuse performance or extend the time for compliance beyond the time fixed by Congress.

It has been held that a court, under such circumstances as are here presented, and in the exercise of its equitable powers, may extend the time for compliance within Congressionally-mandated time limit, if the Court finds that it would be infeasible or impossible for the EPA, acting in good faith, to meet the Congressional deadline—either because of limited staff or budget or because of the need for further study. *Alabama Power Co. v. Costle*, 204 U.S.App.D.C. 51, 636 F.2d 323, 359 (1980); *NRDC v. Train*, 166 U.S.App.D.C. 312, 510 F.2d 692, 712–13 (1975); *Illinois v. Costle*, 12 ERC 1597 (D.C.C.1979).

However, it has also been held in those same cases that a court must "scrutinize such claims carefully", *NRDC v. Train, supra*, 510 F.2d at 713; and also that "[t]he agency's burden in such case is especially heavy" and "that the agency [bears] ... a heavy burden to demonstrate the existence of an impossibility." *Alabama Power Co. v. Costle, supra*, 636 F.2d at 359.

In *NRDC v. Train, supra*, the Circuit Court for the District of Columbia first recognized an infeasibility or impossibility justification for an agency's non-compliance with a Congressional deadline. The Court essentially held that a Court should not use its powers to require an agency "to do an impossibility." *Id*. However, the Court noted that in evaluating an impossibility defense, a district court must "separate justification grounded in the purpose of the Act from the footdragging efforts of a delinquent agency." *Id*. 510 F.2d at 713.

Congress, in enacting the Clean Air Act, expressly stated that one of the purposes of Subchapter I of the Act (of which Section 7412 is a part) was to ... *accelerate* a national research and development program to achieve the prevention and control of air pollution." 42 U.S.C. § 7401(b)(2) (emphasis added).

Moreover, the purpose behind the adoption of the various amendments to the Act in 1977, including Section 7412, was "to assure that regulatory action can effectively prevent harm before it occurs; to emphasize the predominant value of protection of public health" and, further, "to reflect awareness of the uncertainties and limitations in the data which will be available to the Administrator in the foreseeable future to enable him to execute his rulemaking duties under th[e] ... act, because of the limitations on research resources and the

fact that decisionmaking about the risks to public health from air pollution fall on 'the frontiers of scientific and medical knowledge.'" *See* [1977] Cong. & Ad.News at 1127–28. Thus, the legislative history affirmatively demonstrates that Congress had well in mind that there might be some scientific uncertainty concerning the health effects of air pollutants and that the EPA might be faced with "limitations on research resources" in its attempt to implement the Congressional mandate.

Nevertheless, with these problems in mind, Congress chose to expedite the regulation of hazardous air pollutants, deliberately imposing a mandatory and unqualified deadline for issuing proposed regulations—180 days after the listing of the hazardous air pollutant—with a view to issuance of final regulations within 210 days after the publication of the proposed regulations. *See* 42 U.S.C. § 7412(b)(1)(A) and (B).

In *Illinois v. Gorsuch,* 530 F.Supp. 340 (D.D.C.1981), the most recent case and the case nearest on its facts to our pending case, the district court denied the EPA's request for further extension for compliance with a statutory deadline which had long-since passed, stating

> The fact that RCRA [Resource Conservation and Recovery Act] directs the Administrator to promulgate regulations within eighteen months of the Act indicates that Congress did not direct the Agency to resolve every conceivable problem before issuing regulations. In the more than five years since RCRA was enacted the Agency has had the opportunity to consider various regulatory approaches and numerous comments and suggestions by the affected interests. The Agency may fulfill its mandate to issue regulations as well as satisfy its lingering technical and policy concerns by issuing regulations and later consider revision if the Agency's understanding and expertise expand.

In our pending case, the required regulations are not final regulations, but only "proposed" regulations subject to further public debate under the Congressional scheduling plan. It will be noted that this plan contemplates that during this debate the agency may even find a listed hazardous pollutant is not such after all.

Further, as the court suggested in *Gorsuch, supra,* the EPA can fulfill its mandate by proposing provisional regulations and later considering revision "if the agency's understanding and expertise expand."

In our pending case, it has now been five years since the enactment of § 7412, nearly three years since the EPA listed radionuclides as a "hazardous air pollutant" and almost two and one-half years since the expiration of the 180-day deadline for the issuance of "proposed" radionuclide emission standards.

Certainly, if the EPA had sufficient knowledge to justify listing radionuclides as "hazardous" in 1979, it should have enough knowledge two and one-half years thereafter to at least issue proposed tentative regulations which can be revised from time to time. Accepting EPA's claim that it was acting in good faith in compiling data, it is clear from the record (including the EPA's own declarations, as well as studies undertaken by the EPA and submitted by plaintiffs,)[2] that the agency has already compiled a substantial amount of information on radionuclide emissions.

Moreover, the evidentiary material submitted by the EPA and intervenors seeking a lengthy extension of time for compliance fails to take into account the Congressional purpose to regulate hazardous air pollutants on an expedited basis; rather, by calling for further elaborate study of the radionuclide emission problem and the concomitant increased use of EPA resources, the EPA envisions a level of thoroughness and scien-

2. *See,* EPA, "Radiological Impact Caused by Emissions of Radionuclides into Air in the United States," Preliminary Report, August 1979; EPA, "Development Plan—National Emission Standards for Hazardous Air Pollutants (Radio- active Materials [1220–5])," June 13, 1979; Teknekron, Inc., "Technical Support for the Evaluation and Control of Emission of Radioactive Materials to Ambient Air," May 7, 1981.

tific certainty not within the contemplation of Congress at the time it mandated the regulation of hazardous air pollutants.

So far as limitations of staff or budget are concerned, the EPA does not really show or seriously contend that limitations are such as to prevent it from undertaking the physical process of issuing the required regulations. The real basis of its attempted justification in this case is their claimed need of more time for further study.

Upon the evidentiary record before us, considered against the time period already passed, the information regarding radionuclides already before the EPA, and the Congressional purpose beyond Section 7412, this Court finds and concludes that the EPA has not met its heavy burden of demonstrating that it would be infeasible or impossible to issue the proposed regulations within the 180-day schedule proposed by the plaintiffs—nearly two and one-half years after expiration of the 180-day deadline mandated by Congress.

To accept EPA's proposal for further, indefinite, and virtually open-ended extension of the time for compliance, without a more convincing demonstration of evident impossibility, would be to, in effect, repeal the Congressional mandate. Further, to substitute the Court for making scientific determinations for which the Court has neither the investigative tools, nor expertise, and, further, to grant an extension such as required by the EPA, would involve the Court, rather than Congress, in changing, qualifying or amending, if advisorily, the unqualified, mandatory provisions of Section 7412. Such relief, as sought by EPA should come from the Congress—not from the Courts.

We do not regard the evidentiary record before the Court as sufficient to present any genuine issue of material fact which would preclude the making of an order for compliance requiring that the EPA issue proposed regulations for radionuclides within 180 days.

Plaintiffs' motion for entry of an order scheduling compliance is granted. EPA shall issue the proposed regulations, togeth-er with the notice of public hearing thereon, within 180 days of the entry of this Court's order filed herewith.