**ENVIRONMENTAL DEFENSE FUND, et al., Plaintiffs,**

v.

**Lee. M. THOMAS, Administrator, U.S. Environmental Protection Agency, et al., Defendants.**

**Civ. A. No. 85–1747.**

United States District Court, District of Columbia.

Jan. 28, 1986.

Robert V. Percival, David J. Lennett, Washington, D.C., for plaintiffs.

Robert E. Steinberg, Barry S. Neuman, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

William R. Weissman, Jane Seigler, Washington, D.C., for amicus curiae.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on the parties' cross-motions for summary judgment. Plaintiffs' motion has appended to it various public documents as well as documents under seal regarding deliberations between defendants. Defendants' motion, originally filed in July of 1985, was supplemented in December of 1985. This court has allowed groups representing the electric utilities industry to file a single amici curiae brief.

### I. *Background*

In November of 1984, Congress enacted the Hazardous and Solid Waste Amendments of 1984 ("1984 Amendments"), Pub.L. 98–616 (Nov. 8, 1984), which amended the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6924. RCRA is a comprehensive statute designed to regulate the management of hazardous and solid wastes. One of the new amendments, Section 3004(w) of RCRA, 42 U.S.C. § 6924(w), provides that "(n)ot later than March 1, 1985, the (Environmental Protection Agency or "EPA") Administrator shall promulgate final permitting standards under this section for underground tanks that cannot be entered for inspection."

This deadline was not met. Plaintiffs contend that EPA's ability to promulgate the regulations was further prevented by the unlawful interference of the Office of Management and Budget ("OMB"). Plaintiffs, Environmental Defense Fund Inc. ("EDF") and two individuals brought suit in this court on May 30, 1985. Plaintiffs seek an order that EPA must promulgate the regulations by April 25, 1986. Plaintiffs also seek injunctive relief against OMB to prevent similar interference in the future.

Defendants EPA and OMB want until June 30, 1986 to promulgate the regulations. Further, they contend that this court has no jurisdiction to grant injunctive relief against OMB of this kind. The electric utilities groups, Edison Electric et al., agree with defendants.

### II. *Jurisdiction*

Both parties agree that RCRA gives this court jurisdiction to order the Administrator of EPA to perform nondiscretionary duties and allows this court to set a date by which EPA must promulgate the hazardous waste tank regulations. 42 U.S.C. § 6972(a)(2). The only real dispute is by which deadline EPA can reasonably be ordered to promulgate final standards.

Jurisdiction to grant injunctive relief against OMB is the more controversial aspect of this suit. At the crux of this disagreement is the lawfulness of OMB's activity pursuant to the Congressional deadline and pursuant to Executive Order 12291, 46 Fed.Reg. 13193 (Feb. 17, 1981), 3 C.F.R. 127 (1982) ("EO 12291").

EO 12291 directs executive agencies to submit all proposed and final rules to OMB

for pre-publication review to determine if they are consistent with certain criteria (e.g., the regulations must be based on adequate information, the potential benefits must outweigh the potential costs, the net benefits to society must be maximized, and the alternative involving the least net cost to society must be chosen). Also, the order states that "major rules" are submitted to OMB for review 60 days before publication of proposed rules and 30 days prior to publication of final rules. All other rules are submitted to OMB for review 10 days before publication of proposed rules and 10 days prior to publication of final rules. OMB is deemed to have concluded its review after expiration of these time periods unless it notifies the agency that it has extended its review pursuant to Section 3(f). This extension may be indefinite.

OMB's authority is qualified by the rule. Section 8(a)(2) of EO 12291 exempts regulations "for which consideration or reconsideration under the terms of this Order would conflict with deadlines imposed by statute or by judicial order." Further, "(n)othing in this subsection shall be construed as displacing the agencies' responsibilities delegated by law." Sec. 3(f)(3). The executive order also limits OMB's authority by authorizing OMB to exercise its review only "to the extent permitted by law." Secs. 2, 3(a), & 6(a).

Plaintiffs contend that OMB's interference with the promulgation of the EPA regulations unlawfully delayed their promulgation, in violation of both the RCRA amendments and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Plaintiffs argue that under 28 U.S.C. § 1331 and § 1361, this court may exercise inherent equitable powers to grant injunctive relief preventing further OMB interference.

Defendants respond that ordering OMB to refrain from reviewing any proposed regulations under RCRA whenever such review would delay promulgation of the regulation beyond a statutory deadline is an unjustifiable and inappropriate use of this court's power. As defendants see it, neither the RCRA nor the APA gives this court jurisdiction over OMB in this matter. Further, there is no jurisdiction to enforce any constraints found within the Executive Order itself.

There is no doubt that this court has jurisdiction over both plaintiffs' RCRA and APA claims against the Administrator of EPA. 42 U.S.C. § 6972(a)(2) and 5 U.S.C. § 702. In compelling EPA to perform non-discretionary duties, however, it is also appropriate to fashion equitable relief to ensure that such duties are performed without the interference of other officials acting outside the scope of their authority in contravention of federal law. Though injunctive relief is not appropriate in these circumstances, as discussed below, there can be no doubt that an executive agency or agencies can be enjoined by this court from failing to execute laws enacted by Congress.

III. *Discussion*

While the merits of relief against EPA and relief against OMB can be discussed separately, first a discussion of what exactly caused the delay in promulgating the regulations is in order. From the documents released by OMB and EPA under seal, an interesting picture of OMB involvement in the promulgation process emerges.

Congress set March 1, 1985, as the deadline for promulgating the regulations. OMB commenced its review of the proposed permitting standards on March 4, 1985. Since these were not "major rules" under the meaning of EO 12291, EPA anticipated that OMB would complete its review within 10 days. On March 15, 1985, EPA staff briefed OMB staff on the proposed regulations. OMB refused to clear the regulations and on March 25, 1985, notified EPA that it was extending its review of the proposed regulations. OMB apparently wanted EPA to gather additional information prior to promulgating the regulations even though it would delay the process. By April 10, 1985, EPA had still not received any formal comments from OMB.

By April 12, 1985, it was clear that OMB had serious differences with EPA over what regulations to propose. At a meeting of April 16, 1985 between OMB and EPA staff members, OMB sought significant changes in the proposed regulations in four areas. The idea, apparently, was to shift the goal of the regulations away from EPA's philosophy of containing all leaks of waste disposals to OMB's philosophy of preventing only leaks of waste that can be demonstrated by risk analysis to threaten harm to human health.

Internal disagreement within OMB further delayed OMB's consideration of the regulations. Some OMB staff members apparently felt that OMB should not be dictating substantive policy decisions to EPA while others felt the precedent being set an important one for OMB review of other RCRA regulations.

After this suit was filed on May 30, 1985, OMB continued to seek specific changes in EPA's proposed regulations as well as changes not previously discussed. After various negotiations regarding the substance of the regulations, OMB completed its review and cleared the proposed regulations on June 12, 1985. The EPA Administrator signed them June 14, 1985 and the proposed regulations were published in the Federal Register on June 26, 1985, 50 Fed. Reg. 26444, after OMB approved some last-minute stylistic changes made by EPA staff.

**A.** *The Final Date for Promulgating the Regulations*

The parties agree and this court finds that the Administrator of EPA has failed to comply with his nondiscretionary duties under § 3004(w) of the RCRA. There is disagreement, however, about when the final regulations should be ordered promulgated. Plaintiffs contend that a reasonable time is April 25, 1986 while defendants prefer a deadline of one year from the date the regulations were proposed (i.e. June 30, 1986).

Defendants justify their time-table in an affidavit filed by John H. Skinner, Director of EPA's Office of Solid Waste ("OSW"). Public comments were received on the proposed regulations during a two-month period in the summer of 1985. EPA's technical staff evaluated these comments from September through November 1985. After completing a risk assessment, EPA will develop final draft rules by the end of February 1986. By mid-April, 1986, an EPA work group will comment on the final draft and OSW will complete a revised draft in light of these comments. By the end of May, 1986, OSW will prepare the final rulemaking package for senior level review within EPA (known as "Red Border" review) and for OMB review. The time for doing this will be streamlined and the two agencies review will be done concurrently. The regulations will then become final by June 30, 1986.

Plaintiffs argue that one year is unnecessarily long. EPA has not received as many public comments as was anticipated. EPA's prior and current promulgation schedules are in the neighborhood of nine months, not one year (e.g., the schedule now being followed for comparable small generator rules). As plaintiffs see it, this is the kind of unwarranted delay which this and other courts have struck down before. *NRDC v. Ruckelshaus*, 14 ELR 20817 (D.D.C. Sept. 14, 1984); *State of New York v. Gorsuch*, 554 F.Supp. 1060 (S.D.N.Y. 1983); *Environmental Defense Fund v. Gorsuch*, 17 ERC 1099 (D.D.C.1982); *Sierra Club v. Gorsuch*, 551 F.Supp. 785 (N.D. Cal.1982); *State of Illinois v. Gorsuch*, 530 F.Supp. 340 (D.D.C.1981).

Promulgation of regulations 16 months after a Congressional deadline is highly irresponsible. Congress was aware of the complexity of these hazardous waste regulations and yet decided that quick promulgation was of paramount importance. Now that the damage is done, however, this court must fashion an equitable remedy that best achieves the Congressional purpose. This court has previously felt bound to accept a proposed schedule by EPA where EPA demonstrates through affidavit that it is "proceeding in good faith,"

*Illinois v. Gorsuch,* 12 ERC 1597, 1598 (D.D.C.1979), rather than mandate flat guidelines of its own. *NRDC v. Train,* 510 F.2d 692, 712–13 (D.C.Cir.1975). After reviewing the proposed schedule set forth by EPA in this case, it appears that the June 30, 1986 deadline is reasonable. This date is only two months later than the date sought by plaintiffs. Therefore, it is ordered that the regulations be promulgated by that time. Failure to do so would be capricious and would merit stronger equitable treatment.

### B. *OMB's Interference with the Promulgation Process*

From the discussion above, it seems clear that OMB did contribute to the delay in the promulgation of the regulations by insisting on certain substantive changes. The released documents show that EPA was ready to announce proposed regulations in the Federal Register as early as March 31, 1985, but due to OMB it did not happen until three months later.

■ A certain degree of deference must be given to the authority of the President to control and supervise executive policymaking. *Sierra Club v. Costle,* 657 F.2d 298, 405 (D.C.Cir.1981) (regarding whether oral communications between EPA and the White House must be docketed on the rulemaking record when EPA revises Clean Air Act provisions). Yet, the use of EO 12291 to create delays and to impose substantive changes raises some constitutional concerns. Congress enacts environmental legislation after years of study and deliberation, and then delegates to the expert judgment of the EPA Administrator the authority to issue regulations carrying out the aims of the law. Under EO 12291, if used improperly, OMB could withhold approval until the acceptance of certain content in the promulgation of any new EPA regulation, thereby encroaching upon the independence and expertise of EPA. Further, unsuccessful executive lobbying on Capitol Hill can still be pursued administratively by delaying the enactment of regulations beyond the date of a statutory deadline. This is incompatible with the will of Congress and cannot be sustained as a valid exercise of the President's Article II powers.

Such concerns were noted by Congress when EO 12291 was passed. In order to ensure the legality of the operation of EO 12291, James C. Miller III, now the director but then the administrator of OMB's Office of Information and Regulatory Affairs ("OIRA"), appeared before a congressional committee and stressed the importance of construing narrowly the authority granted to OMB. Mr. Miller testified:

President Reagan's Executive order imposes on the agencies only "to the extent permitted by law" and only to the extent that its terms would not "conflict with deadlines imposed by statute or by judicial order." The limited application of (EO 12291) is a crucial point, one that insures (its) legality and the legality of actions pursuant to (it). ... If a statute or a court order establishes a date for a rulemaking action, the Executive Order 12291 cannot delay that action.

Testimony of James C. Miller III, in *Role of OMB in Regulation: Hearing Before the Subcomm. on Oversight and Investigation of House Comm. on Energy & Commerce,* 97th Cong., 1st Sess 46 (1981).

The Justice Department has also emphasized that EO 12291 must be construed narrowly to survive legal challenge.

(I)t is clear that the President's exercise of supervisory powers must conform to legislation enacted by Congress. In issuing directives to govern the Executive Branch, the President may not, as a general proposition, require or permit agencies to transgress boundaries set by Congress.

U.S. Department of Justice, Office of Legal Counsel Opinion on EO 12291, February 13, 1981.

This court has previously found that in certain egregious situations, statutory delay caused by OMB review is in contravention to applicable law under Section 8(a)(2) of EO 12291 and therefore that no further OMB review could occur. *NRDC v. Ruck-*

*elshaus,* 14 ELR 20817, 20818 (D.D.C.1984). In *Ruckelshaus,* however, by the time the court order issued, EPA was six years passed the deadline set by Congress. In the case at bar, enjoining OMB from interacting at all with EPA simply because OMB *might* cause delay past the new judicial deadline is premature and an unwarranted intrusion into discretionary executive consultations.

There is, however, some credence in plaintiffs' fear that the regulations due June 30, 1986, may still be delayed by OMB. While defendants claim that OMB review of the final regulations in May of 1986 will be concurrent with EPA senior level review, such concurrent review of the proposed regulations in the spring of 1985 resulted in considerable delay. Concurrent review does not eliminate delay, since any changes sought by OMB must then be reviewed by senior level EPA officials. This court declares therefore that further review by OMB which creates any delay in meeting the June 30, 1986 deadline is unreasonable and unacceptable. EPA is obligated to promulgate the regulations by that date and may not use the excuse of OMB review to refrain from doing so.

Plaintiffs also protest that OMB routinely reviews other EPA regulations subject to statutory deadlines even if such review will delay promulgation beyond the deadline. Unless this court declares that OMB has no authority to delay promulgation of all EPA regulations beyond statutory deadlines, OMB will continue to do so both for the Section 3004(w) standards and for other RCRA regulations subject to statutory deadlines in the 1984 amendments. Through answers to interrogatories, plaintiffs show that EPA submitted 169 regulations to OMB which were subject to statutory or judicial deadlines, and on 86 occasions OMB extended its review beyond the time periods outlined in EO 12291. OMB's propensity to extend review has become so great that EPA keeps a running record of the number of its rulemaking actions under extended review by OMB and the resulting delays. The average delay per regulation is 91 days; total delays were more than 311

weeks. Apparently Section 8(a)(2) of EO 12291 is simply ignored.

Congress clearly is concerned with OMB's use of EO 12291 with regard to the deadlines set within the 1984 Amendments. The House Committee report that accompanied the 1984 Amendments states:

> The Committee is extremely concerned that EPA has not been able to comply with past statutory mandates and timetables, not just for RCRA, but for virtually all its programs .... The Administrator's ability to meet this deadline (for publishing a schedule for land disposal ban decisions) as with all other deadlines in this bill, shall not be impaired in any way whatsoever by Executive Order 12291.

Hazardous Waste Control and Enforcement Act of 1983, Report of House Comm. on Energy and Commerce, 98th Cong., 1st Sess., May 17, 1983, at 34, 35, 1984 U.S. Code Cong. & Admin.News 5576, 5593–94.

The Hazardous and Solid Waste Amendments of 1984 added at least 44 new deadlines to RCRA, 29 of which must be satisfied within the next 20 months.

This court declares that OMB has no authority to use its regulatory review under EO 12291 to delay promulgation of EPA regulations arising from the 1984 Amendments of the RCRA beyond the date of a statutory deadline. Thus, if a deadline already has expired, OMB has no authority to delay regulations subject to the deadline in order to review them under the executive order. If the deadline is about to expire, OMB may review the regulations only until the time at which OMB review will result in the deadline being missed. From its tracking system, EPA can determine when further delay due to OMB review will result in a deadline being missed.

While this may be an intrusion into the degree of flexibility the executive agencies have in taking their time about promulgating these regulations, this is simply a judicial recognition of law as passed by Congress and of the method for dealing with deadlines laid down by the President him-

self. Such a recognition is not new. *See NRDC v. Gorsuch,* 17 ERC 2013, 2016 (D.D.C.1982). Indeed, OMB itself admits that it cannot prevent an agency from complying with statutory requirements. Yet declaratory relief is necessary to ensure compliance with the clearly expressed will of Congress. This is not an inappropriate interference with the interaction of executive agencies; all such interaction may continue absent a "conflict with deadlines imposed by statute or by judicial order." Sec. 8, EO 12291.