**CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC. and Watertown Citizens for Environmental Safety, Plaintiffs,**

v.

**William K. REILLY, as Administrator of the United States Environmental Protection Agency, Defendant.**

**Civ. A. No. 89–2325–Y.**

United States District Court, D. Massachusetts.

Jan. 15, 1991.

Stephanie Pollack, Stephen Burrington, Peter Shelley, Conservation Law Foundation, Boston, Mass., for plaintiffs.

W. Christian Schumann, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

In an order dated June 30, 1990, this Court granted partial summary judgment against the Administrator of the Environmental Protection Agency (the "Administrator") on the issue of his liability, declaring that he had failed to meet the mandatory obligations created by the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. (1986) (the "Act"). *Conservation Law Foundation of New England v. Reilly,* 743 F.Supp. 933, 942–43 (D.Mass.1990). Specifically, the Court held that the Administrator had failed to perform preliminary assessments of facilities that were listed on the Federal Hazardous Waste Compliance Docket (the "Docket") by the statutory deadline of April 17, 1988 and had failed to evaluate and include appropriate facilities on the National Priorities List (the "Priority List") by the statutory deadline of April 17, 1989. 42 U.S.C. sec. 9620(d). *Ibid.*

Pursuant to a further motion for summary judgment, the plaintiffs now request the Court to impose a deadline on the Administrator for the completion of these duties. The Administrator counters that summary judgment is inappropriate and that an evidentiary hearing is required before this Court can frame a proper remedy.

### I. APPROPRIATE REMEDY.

Since Congress has formulated policies and priorities concerning the clean up of hazardous waste sites, it is this Court's duty to mandate implementation of the congressional policies when the executive fails to carry out non-discretionary duties required by law. *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 194–95, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978). While this Court is not "mechanically obli-

gated to grant an injunction for every violation of law," it should give strong consideration to the policies and priorities set for the nation by Congress. *Id.* at 193–94, 98 S.Ct. at 2301. *See State v. Gorsuch*, 554 F.Supp. 1060, 1066 (S.D.N.Y.1983) ("If the Administrator disagrees with the burden Congress has imposed upon [the] Agency, [the] proper recourse is to persuade Congress to amend the statute, not to defy the statute and seek relief from the courts.")

In *Natural Resources Defense Council v. Train*, 510 F.2d 692, 713 (D.C.Cir.1975), the District of Columbia Court of Appeals considered the mandatory duties imposed on the Environmental Protection Agency by the Federal Water Pollution Control Act. In that case, the court held that according to the congressional purpose of the statute and the legislative history, the Agency had a duty to publish effluent limitation regulations by December 31, 1974. *Id.* at 710–12. Although the decision of the Court of Appeals preceded the December 31, 1974 deadline, the court set out the factors which the district court was to consider in formulating a remedy if the Agency eventually failed to meet its statutory deadline. *Id.* at 712.

The Court of Appeals also noted two constraints which could preclude an agency from meeting its statutory deadline and thereby render compliance with the deadline impossible: (1) budgetary commitments and manpower demands which are beyond the agency's capacity or which jeopardize the implementation of other essential programs, and (2) technical intricacies involved in the duty itself. *Id.* The *Train* court noted that the district courts have discretion to

give or withhold [a] mandate in furtherance of the public interest, including specifically the interest in effectuating the congressional objective ... [and] may forbear the issuance of an order in those cases where it is convinced by the official involved that he has in good faith employed the utmost diligence in discharging his statutory responsibilities. The sound discretion of an equity court does not embrace enforcement through contempt of a party's duty to comply with an order that calls him "to do an impossibility."

*Id.* at 713 (quoting *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 [1948]).

The *Train* case—the leading case on the issue of agency failure to meet statutory deadlines, *Sierra Club v. Thomas*, 658 F.Supp. 165, 170 (N.D.Cal.1987) (Schwarzer, J.)—thus requires that, in order to avoid imposition of the statutory time period, an agency must prove that compliance would be impossible.[1] As noted in *Train*, courts have discretion to forbear issuing an order, even if the agency fails to prove impossibility, if the court believes that the agency, in "good faith," employed "utmost diligence" to complete its duties but nevertheless failed to meet its deadline. 510 F.2d at 713. Courts have disagreed, however, over the appropriate application of this discretion. For example, in *Environmental Defense Fund v. Thomas*, 627 F.Supp. 566 (D.D.C.1986), the court applied a general "good faith" standard in accepting the agency's proposed schedule for completion of its mandatory duty if the agency proved that it was "proceeding in good faith." *Id.* at 569. In that case, the plaintiff's requested deadline and the agency's proposed deadline were only two

---

**1.** In *Sierra Club v. Thomas*, 658 F.Supp. 165 (N.D.Cal.1987) the district court noted that the Clean Air Act required the Environmental Protection Agency to promulgate regulations "not later than two years after August 7, 1977," *id.* at 169, and, citing *Natural Resource Defense Council, Inc. v. Train*, 510 F.2d 692 (D.C.Cir.1975), held that the defendants would be required to promulgate the regulations required under the Clean Air Act within the statutory time period, unless the defendant proved that doing so would be impossible or infeasible. *Sierra Club v. Thomas*, 658 F.Supp. at 170. The court con-

sidered whether the budgetary commitments and manpower demands required to complete the task within the statutory time frame were beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs and whether the official involved had employed utmost diligence in discharging his statutory responsibilities. *Id.* at 170–71. *See also Sierra Club v. Ruckelshaus*, 602 F.Supp. 892 (N.D.Cal.1984) (Court applies the *Train* analysis of impossibility to mandatory duties under the Clean Air Act).

months apart and the agency had submitted a detailed outline of its proposed schedule for completion, indicating all of the steps in its process and intermediate deadlines by which they would be completed. *Id.* at 569. In addition, there was ample evidence that the agency had not been ultimately responsible for the failure to meet the original statutory deadline because the Office of Management and Budget had delayed action on the regulations past the statutory deadline. *Id.* at 568–69. Yet decisions subsequent to *Environmental Defense Fund v. Thomas* have disagreed with that court's loose requirement of "good faith," emphasizing instead that courts should require proof of "utmost diligence" in trying to meet the original statutory deadline before exercising discretion to forbear issuing an order. *See Sierra Club v. Thomas,* 658 F.Supp. at 171 n. 5; *State v. Gorsuch,* 554 F.Supp. at 1065 n. 4 ("If the administrator could possibly have complied with the statutory mandate, but did not because of competing concerns or other decisions on his [sic] part, then he [sic] is not acting in 'good faith' as I would use that term in this area").

Whatever the scope of this Court's discretion, however, the general rule nevertheless requires the agency to prove that compliance would be impossible and courts have noted that the Administrator's burden of proving impossibility is an "especially heavy" one. *Train,* 510 F.2d at 713 (Courts "must scrutinize such claims [of impossibility] carefully since officials may seize on a remedy made available for extreme illness and promote it into the daily bread of convenience"). *Accord State v. Gorsuch,* 554 F.Supp. at 1064; *Sierra Club v. Thomas,* 658 F.Supp. 165, 171 (N.D.Cal. 1987).

## A. The proof of "impossibility"

The Administrator has presented evidence describing numerous difficulties the Agency may encounter if ordered to meet its mandatory duty.[2] The Administrator provides evidence that the task of preparing preliminary assessments and evaluations is complicated. (Aff. Timothy Fields, attached as ex. A to Agency Memorandum Regarding Remedy). The Fields affidavit describes the procedures which the Agency must complete in order to evaluate a facility for the Priority List. Although the evidence details the intricacies of performing the tasks required, it does not state that the tasks cannot be accomplished within the statutory time period, i.e. 18 months to conduct a preliminary assessment and 30 months to complete an evaluation. There is no specific evidence as to how long the Agency expects this "complicated" process to take. The evidence merely suggests that there is a *possibility* that the statutory deadline might not be feasible. Even if this Court were to accept the evidence as true, it does not create a genuine issue of material fact as to whether the mandatory duties can be performed within the 30 month statutory time period.

Next the Administrator argues that the Agency cannot accomplish its duties within the statutory deadline because it has conflicting priorities. The Agency has an obligation to perform evaluations for all facilities, not just the federal facilities, and the Agency has a duty to revise the Hazard Ranking System standards through which it rates facilities for the Priority List. (Fields affidavit, ¶ 10). Although the Administrator's evidence reveals that the Agency has these other obligations, the evidence does not state how these compet-

---

**2.** The Administrator argues that the Court must analyze the Agency's ability to comply on a facility-by-facility basis before it may formulate an appropriate remedy. This Court disagrees. It is not the Court's duty to involve itself in the substance of the Agency's decision. *See Commonwealth of Massachusetts v. Andrus,* 594 F.2d 872, 887–88 (1st Cir.1979) ("Congress has certainly given [the courts] no general authority to place prior restraints upon [an agency] in order to force its decisionmaking into a particular mold"). Rather it is this Court's duty to enforce the policies and priorities created by Congress unless they are proven impossible. As Congress created the policies and priorities of hazardous waste cleanup and mandated a 30 month period of time within which the Agency could complete its duties, this Court should not engage in a further "legislative" process by replicating in more detail what Congress has done. It is simply up to the Agency to prove that the ultimate deadline is impossible.

ing obligations will impact on the proposed 30–month deadline. This evidence does not, therefore, create a genuine issue of material fact as to whether the statutory deadline is feasible.[3]

Finally, the Administrator argues that it is *possible* that some of the information obtained during preliminary assessments prior to the current revision of the Hazard Ranking System may need to be re-evaluated if information now needed under the current system had not been obtained earlier. First, this argument does not create a genuine issue of material fact concerning impossibility because it is merely speculative. The evidence does not show that information is lacking; rather, it shows that there is a possibility that at some later date the information already obtained will come to be considered inadequate. It must be remembered that the statutory deadline provides 18 months to prepare a preliminary assessment and 30 months to evaluate the facilities. Moreover, the Agency is given 18 months to obtain the necessary information as to any facility for which the Agency does not have a complete preliminary assessment and then 12 months to evaluate the facility.[4]

The Administrator has failed to prove that compliance with the applicable statutory deadline would be impossible. Thus, unless the Court exercises its own discretion to forebear from issuing an injunction, an appropriate remedy is to order compliance within a further 30 month time period or such shorter period as may be appropri-

ate. *See Train,* 510 F.2d at 704–10; *Sierra Club v. Thomas,* 658 F.Supp. at 175; *see also State v. Gorsuch,* 554 F.Supp. at 1063 ("To ignore or modify the statutory timetable would be to flout the considered judgment of Congress"); *Sierra Club v. Ruckelshaus,* 602 F.Supp. at 899; *Sierra Club v. Gorsuch,* 551 F.Supp. 785, 789 (N.D.Cal. 1982).

### B. The proof of "utmost diligence"

"[T]he court may forebear the issuance of an order in those cases where it is convinced by the official involved that he has in good faith employed the utmost diligence in discharging his statutory responsibilities." *Train,* 510 F.2d at 713. Here, the Administrator presents the following evidence which he argues proves that the Agency has used utmost diligence in attempting to meet its statutory deadline:

(1) Twenty of the forty facilities in Region I which were on the original docket have been completely evaluated to date (Declaration of Jane Anderson Regarding Evaluation of Federal Facilities at ¶ 3.) and (2) 116 federal facilities have been placed on the National Priority List since 1986, representing 9.8% of the 1187 total sites on that list (Declaration of Suzanne Wells at ¶ 2.). The Agency has chosen first to evaluate the "worst" facilities and these evaluations therefore have taken longer than they will in the future for less complex facilities.[5] The Agency has also submitted specific evidence on six facilities in New

---

**3.** The Administrator also argues that the Agency has limited funding and staffing resources. The evidence, however, fails to specify what funding and staffing resources are lacking and how they make the proposed deadline infeasible.

**4.** The Agency also points out that, since other agencies provide the preliminary information on each facility, the Agency should not be held to a deadline to complete its evaluations since it cannot control the activities of other agencies. Congress originally imposed a deadline for completion of the duties imposed by the Act and it presumably had knowledge that other agencies would assist in gathering data. This Court should not relax the congressional deadline unless the evidence shows that completion within the deadline would be impossible. The evidence submitted does not state that there *is* a

problem with other agencies complying with the deadlines, but rather the evidence merely states that there is a *possibility* that agencies in the future may cause the Agency to miss its deadlines.

**5.** The Administrator also submitted evidence that 44 percent of nonfederal sites have been declared "no further remedial action planned" at the preliminary assessment stage while only 27 percent of the federal sites have been so declared. (Declaration of Suzanne Wells, ¶ 4.) Although this statistic may imply that federal facilities take longer to evaluate than nonfederal facilities, this information is, in fact, immaterial because the Act mandates action on federal facilities only, and it is the "utmost diligence" with respect to the statutory mandate that is material here.

England but this evidence focuses on the future action yet to be taken to complete the evaluations rather than the Agency's past "diligence."

That this "diligence" is the "utmost" which may be expected from the Agency is, however, substantially undercut by a letter from the Agency's Region IV which states:

> Region IV is pleased to report that *all* facilities listed on the docket met the statutory deadline of April 17, 1988, by submitting Preliminary Assessments by that date. We believe that we have an excellent ongoing dialogue with the facilities in the Southeast and we are confident that this personal contact and extra effort on our part supports our success in achieving compliance with this statutory requirement.

(Plaintiffs' ex. 29) (emphasis in original).

The burden of proving "utmost diligence" is on the Administrator and the Agency. *Train,* 510 F.2d at 713. The Agency cannot avoid this Court's equitable power to formulate a remedy merely by alleging that factual disputes exist. *Sierra Club v. Ruckelshaus,* 602 F.Supp. at 898 n. 9. Indeed, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ..." to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Given that Region IV successfully completed its duties within the statutory time period by creating an "excellent ongoing dialogue" and employing "extra effort," the contrasting fact that only 50% of the facilities in Region I have been evaluated to date does not prove the Agency's "utmost diligence." Upon the undisputed facts, therefore, even drawing all reasonable inferences in favor of the Agency, it has failed to prove that it employed utmost diligence in meeting its statutory deadline. Although the statistical evidence shows some progress toward the completion of the mandatory duties, as matter of law it does not prove utmost diligence. Accordingly, the Agency fails to persuade this Court to exercise its discretion and forbear from issuing an order requiring compliance with the mandatory duties imposed by the Act within the statutory time period.

C. Inferrable deadlines

■ The Act provides in section 120(c) that "the Administrator shall establish a special Federal Agency Hazardous Waste Compliance Docket.... Six months after establishment of the docket and every six months thereafter, the Administrator shall publish in the Federal Register a list of the Federal facilities which have been included in the docket during the immediately preceding 6–month period." 42 U.S.C. § 9620(c), West Publ.Suppl.1990. The following sub-section, 9620(d), states "Not later than 18 months after October 17, 1986, the Administrator shall take steps to assure that a preliminary assessment is conducted for each facility on the docket.... Evaluation and listing under this subsection shall be completed not later than 30 months after October 17, 1986." By its terms, this Court's earlier order is limited to facilities on the Docket as of October 17, 1986. The question arises concerning what action, if any, this Court, as a court of equity, ought take with respect to facilities placed on the Docket during each six month interval, i.e., what deadlines ought be inferred with respect to these facilities? The parties have not briefed this issue and perhaps it is no wonder, for there exists substantial doubt that this Court has any subject matter jurisdiction over this matter.

Clearly, this Court's subject matter jurisdiction is limited to insuring Agency compliance with Congressionally imposed non-discretionary duties.[6] Therefore, the only way that this Court may impose an inferred deadline on the facilities subsequently listed on the Docket is to hold that the

---

**6.** The present case is brought pursuant to a citizen suit provision, 42 U.S.C. 9659(a)(2), which states:

[A]ny person may commence a civil action on his own behalf ... against the President or any other officer of the United States (includ-

ing the Administrator of the Environmental Protection Agency ...) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter ... *which is not discretionary....*

Agency's duty toward these facilities is a non-discretionary one.

In *Sierra Club v. Thomas*, 828 F.2d 783, 791–92 (D.C.Cir.1987), the Court of Appeals for the District of Columbia Circuit observed:

> Although a date-certain deadline ... may or may not be nondiscretionary, it is highly improbable that a deadline will ever be nondiscretionary, i.e. clear-cut, if it exists only by reason of an inference drawn from the overall statutory framework. [Citing *National Resources Defense Council v. Train*, 510 F.2d 692, 710 (D.C.Cir.1975)] "Although there may be isolated occasions when, upon extensive analysis, one can conclude that an inferrable deadline imposes a mandatory duty of timeliness, we believe that they will be very rare. Accordingly, considerations of efficiency and fairness to litigants suggest that when no deadline can be readily-ascertainable from the statute, but is merely inferred from the overall statutory scheme, a claim alleging unreasonable delay under the Clean Air Act should come to [the Circuit Court for the District of Columbia]."

In keeping with this reasoning, this Court concludes that it has no subject matter jurisdiction over any dispute concerning the manner in which the Administrator and the Agency may deal with facilities added to the Docket subsequent to October 17, 1986.[7]

## II. CONCLUSION:

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the Agency has submitted no specific evidence as to why the statutory deadline would be impossible to meet. Although it is inappropriate to set an infeasible deadline in order to punish a delinquent agency, *United Steelworkers of America v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C.Cir.1986), the evidence presented by the Administrator does not prove that completion of the mandatory duties imposed by the Act would be impossible within the statutory time period. The Court declines to exercise its discretion to forebear from issuing an order because the Agency has failed to prove that it employed utmost diligence to comply with its duties.

Accordingly, the Court orders that, within 18 months of the date of this order, the Administrator and Agency shall conduct a preliminary assessment of each facility on the Docket as of October 17, 1986, and within 30 months of the date of this order shall complete evaluations of such facilities for the Priority List.[8] Judgment shall enter so declaring.

Further, the Court will retain jurisdiction over this matter to consider any further motion of the plaintiffs seeking to establish interim deadlines as well as to establish shorter deadlines for preliminary assessments and complete evaluations.

This double barreled approach allows the government the opportunity for a prompt appeal of this Court's conclusions, *inter alia*, as to standing, the nondiscretionary nature of the statutory duty, and the proprietary of entering summary judgment as to remedy. At the same time, the plaintiffs may press for further, more expeditious relief, a request which—on the present record—appears to require an evidentiary hearing which cannot be scheduled for some time.

---

7. As noted above, since this issue has not been briefed by the parties, the Court will reconsider the conclusion expressed herein upon motion supported by a brief.

8. Thus the Administrator and the Agency get another full statutory term to do what they ought already have accomplished. *See* 42 U.S.C. § 9620(d) establishing the 18 and 30 month statutory deadlines. This is the teaching of *Sierra Club v. Thomas*, 658 F.Supp. at 175.