**CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC. and Watertown Citizens for Environmental Safety, Plaintiffs,**

**v.**

**William K. REILLY as Administrator of the United States Environmental Protection Agency, Defendant.**

Civ. A. No. 89–2325–Y.

United States District Court, D. Massachusetts.

July 30, 1990.

Stephanie Pollack, Conservation Law Foundation, Stephen Burrington, Peter Shelley, Boston, Mass., for plaintiffs.

W. Christian Schumann, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendant.

YOUNG, District Judge.

The complaint in this case alleges that the Administrator of the Environmental Protection Agency (the "Administrator") failed to assess and evaluate federal facilities for hazardous waste as is required pursuant to a nondiscretionary duty imposed on him by section 120 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. section 9620 (1983 & Supp. 1990).[1] The plaintiffs Conservation Law

---

1. Count IV alleges a violation of the Administrator's nondiscretionary duty to promulgate regulations. This count, however, is moot because the Administrator has promulgated regulations that were published in the Federal Register on April 16, 1990. 55 Fed.Reg. 14,208 (to be codified at 40 C.F.R. sec. 373).

Foundation of New England, Inc. and Watertown Citizens for Environmental Safety (the "environmental groups") bring the suit on behalf of the members of their organizations.

Under section 120(c) of CERCLA the Administrator must establish a "Federal Agency Hazardous Waste Compliance Docket" (the "Docket") listing federal facilities that have potential hazardous waste problems. 42 U.S.C. sec. 9620(c). Section 120(d) requires that once a facility is listed on the Docket, "the Administrator shall take steps to assure that a preliminary assessment is conducted," not later than 18 months after October 17, 1986, which is April 17, 1988. 42 U.S.C. sec. 9620(d). Following the assessment, "the Administrator shall, where appropriate, (1) evaluate such facilities ... and (2) include such facilities on the National Priorities List ... if the facility meets such criteria." *Id.* "Evaluation and listing ... shall be completed not later than 30 months after October 17, 1986," which is April 17, 1989. *Id.*

The Administrator here challenges the standing of the environmental groups by a motion for partial judgment on the pleadings and they counter with affidavits containing their reasons as to why they have standing. The Court accepts these affidavits and converts the Administrator's motion into one for summary judgment on the issue of standing. Fed.R.Civ.P. 12(c). In addition, the environmental groups move for summary judgment with respect to the liability of the Administrator and the remedy they seek.

## I. The Motion of The Administrator

### A. Standing.

■ The essence of standing is " 'whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 [1975] [quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) ] ) (emphasis in original). The constitution requires that a plaintiff allege that he has personally suffered some injury by the defendant's action. *Id.* For a superb analysis of the theoretical underpinnings of the standing requirements, see L. Brilmayer, *The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement*, 93 Harv.L.Rev. 297 (1979) [hereinafter "Brilmayer"].

In his motion, the Administrator argues that the environmental groups in this case lack standing to pursue their claims because they have failed to allege any injury in fact. The Administrator further argues that the environmental groups must prove standing as to every individual site for which they seek a remedy. The environmental groups, on the other hand, argue that they have standing as to all of the sites in the nation because of the citizen suit provision which Congress included in CERCLA. Specifically, CERCLA section 310(a)(2) states that "any person may commence a civil action on his own behalf ... against the President or any other officer of the United States ... where there is alleged a failure ... to perform any act or duty under this chapter ... which is not discretionary...." 42 U.S.C. sec. 9659(a)(2).

■ The Supreme Court, however, has held that the concept of standing implicates constitutional concerns that the judicial power not extend beyond the cases and controversies specified in Article III, Section 2, of the Constitution of the United States. Thus, in order to prove standing,

Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights*

*Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976).

*Valley Forge College v. Americans United*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). In order for an organization to have standing, it must "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511, 95 S.Ct. at 2211 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–41, 92 S.Ct. 1361, 1365–69, 31 L.Ed.2d 636 [1972]); *Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*, 906 F.2d 25, 34 (1st Cir., 1990) [hereinafter *"Playboy Enterprises"*]. The plaintiffs therefore must allege that at least one of their members (1) suffered an injury or threatened injury—the injury in fact requirement, (2) which was caused by the defendant's action (or inaction), and (3) the requested remedy will redress the injury. *Valley Forge College*, 454 U.S. at 472, 102 S.Ct. at 758; *Playboy Enterprises* at 26.

### 1. Injury or threatened injury.

■ The environmental groups argue that the alleged violation of their statutory right to have hazardous waste sites evaluated for inclusion on the National Priorities List within the time frame specified by Congress is an injury. Essentially, they argue that the mere allegation that the Administrator did not meet his statutory duty is enough to confer standing on their members.

Although Article III, section 2, of the Constitution requires a party to allege the three elements listed above before a party will be deemed to have standing to bring a law suit, the "citizen standing" provisions which Congress has included in many statutes seem to abrogate the Article III requirements. For example, in CERCLA, Congress authorized "any person" to bring

suit against any officer of the United States for failure to perform any nondiscretionary act or duty under the Act. 42 U.S.C. sec. 9659(a)(2). CERCLA defines "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." *Id.* at sec. 9601. Since the statute does not state that a "person" must necessarily be injured before he may bring suit to enforce the duties of an officer of the United States, this type of provision seems to remove the injury in fact element required by Article III to give rise to standing.

On the one hand, the Supreme Court has stated in *dicta* that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute[,]" *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973) (citations omitted), thereby implying that a potential plaintiff would have standing even if she had not suffered any direct injury herself. Were this Court to apply the standard stated in *Linda R.S.* to the case before it, it would be abrogating the Article III requirements of injury in fact by allowing citizens to bring suit to enforce the duties of the Administrator, regardless of their relation to any of the facilities on the Docket.

On the other, stronger hand, although the Supreme Court has stated that Congress has authority to determine standing, *see Sierra Club*, 405 U.S. at 732 n. 3, 92 S.Ct. at 1365 n. 3,[2] it has, of course, refused to allow Congress to diminish the standing requirements of Article III. *Valley Forge College*, 454 U.S. at 488 n. 24, 102 S.Ct. at 767 n. 24 ("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III."); *Simon*, 426 U.S. at 41 n. 22, 96 S.Ct.

**2.** In *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), "[t]he club deliberately omitted from its complaint any allegation that its members had been injured in fact, and thus it rejected the traditional indicia of standing." L. Brilmayer, *The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement*, 93 Harv.L.Rev. 297, 309 n. 39 (1979).

at 1926 n. 22 (attempting to reconcile *Linda R.S.* with the standing requirements of Article III); *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. In light of the clear command of *Valley Forge College* and *Warth,* this Court hews to the more cautious course for the reasons expressed in Brilmayer at 306–315 and holds that the mere allegation that the Administrator failed to complete his nondiscretionary duties is not enough to confer standing on these environmental groups because there is no constitutional showing of injury in fact.[3]

In the alternative, the environmental groups argue that they have standing because their members have been injured in fact. It is well established that standing may be premised on actual or threatened injury. *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758. The environmental groups allege that they have been injured by the threat of environmental and health injury to those members of each association who live near the facilities which have not been evaluated. The environmental groups have filed with this Court affidavits stating that certain of their members jog along the banks of a river listed on the Docket, eat mussels gathered near a facility listed on the Docket, receive drinking water from a town located downstream of a facility listed on the Docket, row on a river past discharge pipes from a facility listed on the Docket, use the park across the street from a facility listed on the Docket and live in a Veteran's Hospital listed on the Docket.[4] At least some of these individual members are alleged to have been injured by the failure of the Administrator to conduct the assessment and evaluation of the facilities for inclusion on the National Priorities List.

Although the actual condition of each of the facilities is unknown, it is undisputed that some of the facilities which have been assessed are known to contain hazardous wastes. The assessed facilities are merely awaiting evaluation as to whether they should be listed on the National Priorities List. Once a facility is listed on the National Priorities List, section 120(e) of CERCLA sets forth a detailed schedule for remedial action. 42 U.S.C. sec. 9620(e). Since the deadline for evaluation was April 17, 1989, this one year delay in listing the facilities on the National Priorities List has postponed the initiation of the schedule for remedial action set forth in section 120(e). The environmental groups argue that this delay poses a risk that the condition of the facility will deteriorate and the remedial action will need to be more extensive or will become impossible. They suggest that individuals exposed to the facilities that have been assessed but have not been evaluated for the National Priority List are harmed by the threat of personal injury and a decrease in property values. These threats of injury are said to be magnified by the delay in cleaning up the facilities, especially the facilities known to contain hazardous waste. Even the individuals exposed to facilities that have not been assessed are being harmed by the threat that the contamination will be harmful.

During the one to two year delay, the facilities have not attempted to diminish their hazardous waste activity and therefore may have become more contaminated. Individuals voluntarily exposing themselves to the facilities, whether assessed or not, would be likely to change their behavioral patterns if they had knowledge that the facility which they are exposed to is in such a condition as to warrant its inclusion on the priority cleanup list. It is undisputed that the affiants have been in direct contact with certain of the facilities and

---

**3.** In a more recent Supreme Court case, *Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), the Court stated that it had "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *See also Whitmore v. Arkansas,* —— U.S. ——, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) ("[C]ertain basic principles have been distilled from our decisions. To

establish an Art. III case or controversy, a litigant must first clearly demonstrate that he has suffered an 'injury in fact' ").

**4.** The jogger is a member of the Watertown Citizens for Environmental Safety. The other affiants are all members of the Conservation Law Foundation of New England, Inc.

continue to expose themselves to those facilities. In *Lujan v. National Wildlife Federation*, —— U.S. ——, 110 S.Ct. 3177, 3186–90, 111 L.Ed.2d 695 (1990), the Supreme Court held that an affidavit stating that a plaintiff "uses unspecified portions of an immense tract of territory, on some portions of which mining activity [-to which she objects-] has occurred or probably will occur" was not sufficiently specific to withstand a summary judgment motion challenging her standing. Here, in contrast, each of the facilities at issue appears to be a readily identifiable, site specific location. The affiants here are thus among that group of individuals who fall within the scope of the foreseeable risk of identifiable harm from hazardous waste contamination.[5] If the decision in *United States v. Students Challenging Regulatory Agency Procedures* (SCRAP), 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973),[6] goes "to the very outer limit of the law" and marks "the most attenuated injury conferring Article III standing," *Whitmore*, 110 S.Ct. at 1725, this complaint easily suffices to withstand the Administrator's motion for judgment on the pleadings. Here, while the issue is much closer as the environmental groups have filed affidavits and thus must pass muster under a summary judgment standard, *Lujan*, 110 S.Ct. at 3188–90, this Court, nevertheless, rules that at least one of the members of each of the environmental groups has stated sufficient specific facts to raise a genuine issue concerning whether those affiants have suffered an injury in fact due to the Administrator's failure to assess and evaluate certain of the facilities for inclusion on the National Priorities List.

## 2. Causation.

■ Even if there is injury in fact, however, the Administrator points out with some force that *he* is not alleged to have caused any hazardous waste contamination and thus, even if the environmental groups have standing to sue someone, they have no standing to sue *him*. Tested by the same standard limned in footnote 5 above, however, every extra day that passes without executive action may be said to pose some inchoate risk to the parties exposed to the facilities. The injury in this case is the alleged aggravation of or increase in risk caused by this delay. Although the testing will not change whether the hazardous waste exists at a particular facility, members of the environmental groups who are exposed to the facilities bear an increased risk that the condition of the facilities will worsen during the period of delay. Since the Administrator has a legal duty to perform the assessment and evaluation, his failure to do his duty may properly be said to enlarge the duration of the threatened injury to the members of the environmental groups. The injury that these individuals would have suffered from exposure to the facilities had the facilities been listed on the National Priorities List on October 17, 1989 is arguably less than the harm they will suffer after continued exposure during the delay period. This is sufficient to satis-

---

**5.** The conclusions expressed in this sentence are not—and can not on this record be—considered factual findings. For the purpose of resolving the standing issue on a motion for summary judgment, this Court must necessarily focus on allegations and draw all reasonable inferences therefrom in favor of the non-movant. Fed.R. Civ.P. 56(c); *Lujan*, 110 S.Ct. at 3188–90; *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987). In doing so, the sentence in the text is to be understood as recognizing only that a causal connection may be proved between the exposure of individual affiants and harm from hazardous waste contamination. What is important here after *Lujan* is the specificity of the relationship between a particular plaintiff and the particular geographical area of her concern, not the ultimate proof of actual contamination. Indeed, the whole purpose of this litigation is to cause the government to address that complex factual issue in a timely fashion.

**6.** In *United States v. SCRAP*, 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973), an environmental group was held to have standing to challenge a freight surcharge ordered by the Interstate Commerce Commission upon allegations that "a general rate increase would ... cause increased use of nonrecyclable commodities as compared to recyclable goods, thus resulting in the need to use more natural resources to produce such goods, some of which resources might be taken from the Washington area, and resulting in more refuse that might be discarded in national parks in the Washington area."

fy the causation requirement of the standing test.

### 3. Redressability.

Since the Administrator's failure to evaluate and assess the facilities listed on the Docket may constitute a legal cause of the continued threat of hazardous waste contamination, and since the requested declaratory and injunctive remedies may alleviate the continuing threat, the redressability aspect of the standing test is met. Upon the entirety of the present record, therefore, this Court holds that the environmental groups may well be injured in fact by the Administrator's failure to perform his duty and that the requested relief may redress the injury caused by the Administrator's inaction. The environmental groups therefore have standing to pursue this action.

### B. The Extent of the Plaintiffs' Standing.

Even though the environmental groups have alleged injury in fact to certain of their members from the alleged failure to assess certain facilities, they are not content to limit their claims to those facilities from which injury in fact to identifiable individuals may be said to flow. Rather, the environmental groups here seek to assert the public interest generally and request an order requiring the Administrator to comply with section 120 of CERCLA nationally. Their rather sweeping claims thus require this Court to analyze the breadth or extent of the standing recognized above.

In addition to the constitutional standing requirement, the Supreme Court has imposed several prudential limits on standing. One of these prudential rules denies a plaintiff standing to assert the rights of third parties. *Arlington Heights*, 429 U.S. at 261–63, 97 S.Ct. at 561–62; *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205; *Barrows v. Jackson*, 346 U.S. 249, 257, 73 S.Ct. 1031, 1035, 97 L.Ed. 1586 (1953); *see Whitmore*, 110 S.Ct. at 1727–29; *Gilmore v. Utah*, 429 U.S. 1012, 1016–17, 97 S.Ct. 436, 439, 50 L.Ed.2d 632 (1976) (Burger, C.J., concurring); *Playboy Enterprises* 906 F.2d at 36–37.[7] The Court has applied this prudential rule of standing in order to refrain from adjudicating "abstract questions of wide public significance." *Warth*, 422 U.S. at 500, 95 S.Ct. at 2205. Moreover, these limits to the standing of litigants "serve as procedural safeguards for the important liberal value of self-determination [of non-litigants]." Brilmayer at 310. *See generally* H. Monaghan, *Third Party Standing*, 84 Colum.Law Rev. 277 (1984).

The prudential limits on standing declared by the Supreme Court are not the sole authoritative source of law on the subject, however. Administrative law involves unique standing issues because Congress has complicated the matter by enacting citizen standing provisions in many statutes in the administrative law area, including section 10 of the Administrative Procedure Act which grants standing to any person "adversely affected or aggrieved by agency action." 5 U.S.C. sec. 702. The Supreme Court has thus had to reconcile its own notion of the proper limits of standing with the mandate of Congress. In *Sierra Club*, 405 U.S. at 736, 92 S.Ct. at 1367, the Supreme Court addressed the standing is-

---

7. Although the Supreme Court has stated that a litigant may not assert the rights of third parties as a general rule, it has frequently transgressed its own self-imposed limits. In *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Court did not apply the rule because at least one of the individual plaintiffs was personally injured. In *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), the Supreme Court held that the prudential standing rule barring the assertion of a third party's rights did not apply because the circumstances of the case outweighed the reasons underlying the prudential rule. In *Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*, 906 F.2d at 37 (1st Cir., 1990), the First Circuit held that when a special relationship exists between the plaintiff and the third party whose rights are allegedly infringed, so that the infringement of the third party's rights restricts the plaintiff's own rights, the plaintiff may have standing to enforce the rights of the third party. Finally, the Supreme Court in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), stated that Congress may create a provision granting standing to a plaintiff who would otherwise be barred from federal court by prudential standing rules—an exception of especial pertinence here.

sue as it applies to 'public actions' in the area of administrative law, and considered the same dual aspects of the standing issue as are presented here.[8] The Court stated in *dicta* that "the fact of economic injury is what gives a person standing to seek judicial review under [a] statute, but once review is properly invoked, that person may argue the public interest in support of his claim that the agency has failed to comply with its statutory mandate." *Id.* at 737, 92 S.Ct. at 1367 (citing 3 K. Davis, *Administrative Law Treatise*, secs. 22.05–22.07 [1958]).[9] *See Data Processing Service v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970) ("Certainly he who is 'likely to be financially' injured, *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 477, 60 S.Ct. 693, 698, 84 L.Ed. 869 may be a reliable private attorney general to litigate the issues of the public interest.").

The Supreme Court in *Sierra Club* stated that economic injury is not the only type of injury that will confer standing on a plaintiff. *Id.* at 734–35, 738–40, 92 S.Ct. at 1365–66, 1367–69. Aesthetic and environmental well-being are sufficient to confer standing as long as the plaintiff can prove some direct injury to himself. *Id.* The Court, however, concluded that "a mere 'interest in a problem'" would be insufficient to render a plaintiff "'adversely affected.'" *Id.* at 739, 92 S.Ct. at 1368 (quot-

ing the Administrative Procedure Act).[10] Moreover, although the "prudential standing rule ... normally bars litigants from asserting the rights or legal interests of others.... this rule of judicial self-governance is subject to exceptions, the most prominent of which is that Congress may remove it by statute." *Warth*, 422 U.S. at 509, 95 S.Ct. at 2210. Thus, if a plaintiff alleges a "distinct and palpable injury to himself," and "Congress has granted [the plaintiff] a right of action, either expressly or by clear implication, [this plaintiff] may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of [his] claim." *Id.* at 501, 95 S.Ct. at 2206.

■ So it is here. In enacting section 10 of the Administrative Procedure Act and section 120 of CERCLA, Congress expressly grants a person the right to sue an administrative agency. These citizen suit provisions remove the prudential limits on standing, including the general rule that a party may not pursue a third party's rights. *See Warth*, 422 U.S. at 501, 95 S.Ct. at 2206. Since the environmental groups have alleged injury in fact to certain of their members, they may pursue the legal rights of the general public and request a remedy for all of the national sites for which the Administrator is responsible.[11] Accordingly, the Administrator's

8. The Sierra Club relied on section 10 of the Administrative Procedure Act, 5 U.S.C. sec. 702, for standing. Section 10 of the Administrative Procedure Act is similar to section 120(c) of CERCLA, 42 U.S.C. sec. 9620, and the environmental groups in the case at hand could have relied on either section.

9. The Supreme Court held that the Sierra Club did not have standing because the complaint did not allege a specific injury to the club or its members beyond an injury to the "special interest" in the environment held by the club, thereby rendering the above quoted passage *dicta*. The Sierra Club argued that the Government was creating a "'"heads I win, tails you lose" situation in which either the courthouse door is barred for lack of assertion of a private, unique injury or a preliminary injunction is denied on the ground that the litigant has advanced private injury which does not warrant an injunction adverse to a competing public interest.'" *Sierra Club*, 405 U.S. at 740, n. 15, 92 S.Ct. at

1369, n. 15 (quoting the Sierra Club's Reply Brief). In addressing this argument, the Court stated that no such situation exists because the "test of injury in fact goes only to the question of standing to obtain judicial review. Once this standing is established, the party may assert the interests of the general public in support of his claims for equitable relief." *Id.*

10. In *United States v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1972), the Supreme Court quoted Professor Davis for the proposition that although a mere interest in the problem will be insufficient to confer standing, "an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."

11. *Lujan v. Nation Wildlife Federation*, —— U.S. ——, 110 S.Ct. 3177, 3186–90, 3192–96, 111 L.Ed.2d 695 (1990) is not to the contrary. The National Wildlife Federation there failed to

motion for partial judgment on the pleadings, which the Court has converted into a motion for summary judgment, is DENIED.

## II. The Motion of the Environmental Groups

In pressing for summary judgment on liability and remedy at this stage of the litigation, the environmental groups point out that the Administrator has admitted his failure to assess and evaluate all of the facilities listed on the Docket. They argue that they are thus entitled to summary judgment because his duty to assess and evaluate all of the facilities on the Docket is nondiscretionary. The Administrator counters that summary judgment is improper because the statutory duties set forth in section 120 of CERCLA are discretionary and therefore beyond the reach of the citizen suit provision.[12] In addition, the Administrator argues that there are issues of fact remaining as to the feasibility of the deadlines established in the remedy requested by the environmental groups, and thus summary judgment is improper at least as to remedy.

### A. The undisputed facts—and the disputes concerning them.

The Administrator's answers to interrogatories admit that not all of the facilities listed on the Docket have been assessed and evaluated. (See Plaintiff's Exhibit 1, Answers to Interrogatories 1, 2, 3). In his answers, the Administrator submitted a list of all of the facilities listed on the Docket. Next to each one of the facilities there is either a blank space meaning that no action has been taken on the facility, an "L" meaning that the facility has been listed on the National Priorities List, an "N" meaning that it is not appropriate to place the facility on the National Priorities List, or a

"P" meaning that the facility has been proposed to be put on the National Priorities List. A majority of the facilities listed by the Administrator have a blank space next to them indicating that no evaluation has been completed. The Administrator also submitted a list of facilities listed on the Docket which have not been assessed. This list contains approximately 49 facilities.

The Administrator argues that this list cannot constitute the basis for summary judgement because in so answering, he does not reveal whether other federal facility submissions to the Environmental Protection Agency might constitute "preliminary assessments," even if not labelled as such. In addition, he argues that the environmental groups have failed to present proof that the sites which have been assessed are "appropriate" for National Priorities List evaluation, since the statute states that only those sites deemed to be "appropriate" need to be evaluated for inclusion on the National Priorities List. Finally, the Administrator argues that since assessments but not evaluations have been completed on some of the facilitites, summary judgement is improper because the Environmental Protection Agency may "simply not [have] finished analyzing the preliminary assessment." (Defendant's Brief in Opposition to Summary Judgment at 12 n. 7.) These arguments, however, fail to consider that the statute requires a *decision* (regardless of its content) as to each of the facilities on the Docket *by* April 17, 1989. The fact that the Administrator may still be "analyzing" the assessments, or that there may be more facilities that have been informally assessed than those listed in the answers to interrogatories is irrelevant to the statutory mandate that the facilities be evaluated for possible inclusion on the National Priorities List *by*

raise a genuine issue of material fact as to whether *any* of its members or the Federation itself had suffered injury in fact. There is not the slightest hint in *Lujan* that, if as here injury in fact to particular individuals is established, the law of third party standing discussed above was to be fundamentally altered *sub silentio.*

12. CERCLA clearly states that "any person" may bring suit against the Administrator for failure to perform *nondiscretionary* duties. 42 U.S.C. 9659(a)(2). The section itself, however, states that it applies to "an act or duty under section 9620 of this title (relating to federal facilities)." Section 9620 is the section which imposes the duties at issue in this case.

April 17, 1989. There is no factual dispute that the Administrator has missed this deadline by over a year.

### B. The nature of the statutory duty—discretionary or nondiscretionary?

■ As noted above, the Administrator argues that the citizen suit provision does not apply to his duty to assess and evaluate facilities listed on the Docket because those duties are discretionary. Specifically, he argues that the words in the statute require him to "take steps to assure" that a preliminary assessment is completed and that an evaluation "shall" be done only where "appropriate." 42 U.S.C. sec. 9620(d). Since the manner in which the duties are to be accomplished is left to his discretion, the Administrator argues that the duty itself is discretionary.

Courts have held, however, that a statutory duty that imposes a stated deadline for its completion should generally be construed as a nondiscretionary duty. *Natural Resources Defense Council, Inc. v. Thomas*, 885 F.2d 1067, 1075 (2d Cir.1989); *Environmental Defense Fund v. Thomas*, 870 F.2d 892, 897 (2d Cir.1989); *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir.1987); *Maine v. Thomas*, 690 F.Supp. 1106, 1109 n. 12 (D.Me.1988).

In *Environmental Defense Fund*, 870 F.2d at 897–98, n. 1, the Second Circuit addressed an argument strikingly similar to the one made by the Administrator in this case, *viz.* that because he need not evaluate facilities unless " 'appropriate,' " the duty to make a timely decision is discretionary, and stated that even though the statute required that the Administrator act " 'as may be appropriate,' " the duty was still a nondiscretionary one because the statute required "the making of *some* decision within the stated deadlines." *Id.* (quoting section 109[d] of the Clean Air Act, as amended, 42 U.S.C. sec. 7409[d]) (emphasis in original). Although section 120(d) of CERCLA does not require evaluations unless appropriate, all evaluations and listings "shall be completed not later than 30 months after October 17, 1986." 42 U.S.C. sec. 9620(d). Therefore, the statute clearly intends that some decision be made as to the appropriateness of an evaluation and, if an evaluation is appropriate, that it be completed prior to April 17, 1989.

■ The Administrator also argues that because he has discretion as to what steps to take to assure completion of an assessment, the very duty to make such an assessment is discretionary. In *Kennecott Copper Corp., Nevada Mines v. Costle*, 572 F.2d 1349, 1354–55 (9th Cir.1978), the Ninth Circuit stated that a statute may authorize an official to use his discretion to make a decision but may impose a nondiscretionary duty on the official to act—and to act in accordance with a statutory mandate or timetable. This is the situation presented by enactment of section 120(d). Although the Administrator has discretion to choose the steps to take to assure that an assessment is completed, the assessment must be completed by April 17, 1989. Congress did not attempt to restrict the means by which the Administrator would accomplish his job but Congress did impose an outer limit—completion by April 17, 1989.

None of the cases cited by the Administrator in support of the proposition that the duty is discretionary because the Administrator is granted discretion to choose the method of completing the task involve statutes with a stated deadline. For example, in *Mountain States Legal Foundation v. Costle*, 630 F.2d 754, 766 (10th Cir.1980) the statute required action as "expeditiously as possible." Similarly, the District of Columbia Circuit held that an action required to be taken "within one year of October 18, 1972" was nondiscretionary, but action to be taken "at least annually thereafter" was discretionary. *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 704–05 (D.C.Cir.1974) (quoting section 304[b][1][A] of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. sec. 1314[b][1][A]). Section 120(d), in contrast, states a clear deadline for action.

This Court therefore declares that the statute imposed a nondiscretionary duty to assess all the facilities listed on the Docket

not later than April 17, 1988, regardless of the means utilized by the Administrator to accomplish the task. In addition, the statute imposed on the Administrator a nondiscretionary duty to act not later than April 17, 1989 to evaluate for inclusion on the National Priorities List those facilities deemed appropriate for evaluation. Although there is discretion granted to the Administrator as to the manner and extent of the evaluation, Congress made it clear that these duties were to be completed by April 17, 1989.

Since it is undisputed that the Administrator has not assessed and evaluated all of the facilities on the Docket, that the deadline passed over one year ago, and that the duty is nondiscretionary, the motion by the environmental groups for summary judgement as to liability is ALLOWED.

C. Remedy.

The environmental groups here request not only the declaratory relief just discussed but also injunctive relief in the form of an order to the Administrator (1) to comply with his nondiscretionary duty to assess the unassessed facilities within nine months of the order, (2) to evaluate the remaining facilities that have been assessed within twelve months of the order (the same time period originally granted to the Environmental Protection Agency by Congress), (3) to ensure that preliminary assessments are completed within eighteen months for all facilities added to the initial Docket from the date they were entered on the Docket, and (4) to prepare quarterly status reports on the achievement of these requirements and submit them to this Court. There remain issues of fact concerning the feasibility of the potential deadlines. Summary judgement is therefore DENIED as to the remedy.

SO ORDERED.