**CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC. and Watertown Citizens for Environmental Safety, Plaintiffs,**

v.

**Carol BROWNER, Administrator of the United States Environmental Protection Agency, Defendant.**

Civ. A. No. 89–2325–Y.

United States District Court, D. Massachusetts.

Dec. 9, 1993.

Stephen H. Burrington, Peter Shelley, Conservative Law Foundation, Boston, MA, for plaintiffs.

Nancy K. Stoner, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for William K. Reilly.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

In an order dated July 30, 1990, this Court granted partial summary judgement as to liability against William K. Reilly, then Administrator of the United States Environmental Protection Agency ("Administrator"), holding that, under the citizen suit provision of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 310, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9659, the plaintiffs, two New England-based environmental organizations, had standing to seek nationwide injunctive relief against the Administrator for his failure to assess and evaluate the hazardous waste problems in each of approximately 840 federal waste sites, located throughout the United States, required under § 120(d) of CERCLA, 42 U.S.C. § 9620. *Conservation Law Foundation, Inc. v. Reilly,* 743 F.Supp. 933, 940–43 (D.Mass. 1990). The First Circuit subsequently reversed and remanded, holding that the plaintiffs lacked standing to obtain nationwide injunctive relief. *Conservation Law Foundation, Inc. v. Reilly,* 950 F.2d 38, 41 (1st Cir.1991).

Consequently, seven individuals, Shirley M. Brown, Priscilla T. Chandler, Paul Denning, Susan Falkoff, Marilyn J. Jordan, Gordon Landis and Jenny Lane, all members of both the plaintiff organizations, Conservation Law Foundation ("Conservation Law") and Watertown Citizens for Environmental Safety ("Watertown Citizens"), have moved to intervene as plaintiffs and they, along with the two plaintiff environmental groups, have moved to certify a class action which they argue is an appropriate vehicle to assert standing to obtain nationwide injunctive relief. The Administrator opposes these motions.[1]

---

1. The plaintiffs also move to amend the complaint to include allegations related to class certification. The Administrator does not separately oppose the plaintiffs' motions to intervene and to amend the complaint, but suggests that if the Court denies the Motion to Certify Class Action,

## I. PROCEDURAL HISTORY

The plaintiffs Conservation Law and Watertown Citizens filed a complaint on October 17, 1989 against the Administrator under the citizen suit provision of CERCLA, 42 U.S.C. § 9659; 28 U.S.C. § 1331, governing federal question jurisdiction; and 28 U.S.C. § 1361, governing mandamus jurisdiction.[2] The complaint alleged that the Administrator failed to comply with nondiscretionary duties under § 120(d) of CERCLA involving the evaluation of certain federal facilities for possible inclusion on the CERCLA National Priorities List. Conservation Law and Watertown Citizens requested 1) a declaratory judgment that the Administrator had failed to perform duties under 42 U.S.C. §§ 9620(d) and (h) which are not discretionary, 2) preliminary and permanent injunctions, or in the alternative, a writ of mandamus directing the Administrator to perform his duties with respect to all federal facilities on the nationwide Federal Agency Compliance Docket, and 3) an award of attorneys' fees and other costs pursuant to the citizen suit provision of CERCLA, 42 U.S.C. § 9659(f), the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable laws.

On July 30, 1990, this Court granted the environmental groups' Motion for Summary Judgement as to liability. *Conservation Law Foundation, Inc. v. Reilly*, 743 F.Supp. 933, 942–43 (D.Mass.1990). The Court also held that the two groups had established standing to obtain relief with respect to all of the facilities listed on the Docket. *Id.* at 940. After briefing and a hearing on remedy, this Court ordered the Administrator to complete preliminary assessments at each facility within 18 months and to complete evaluation and listing decisions within 30 months. *Conservation Law Foundation, Inc. v. Reilly*, 755 F.Supp. 475, 481 (D.Mass.1991).

Upon the Administrator's appeal, the First Circuit held that the environmental groups' "allegations of injury-in-fact [with respect to their individual members] are insufficient to warrant the type of nationwide relief they seek in the complaint." *Conservation Law Foundation, Inc. v. Reilly*, 950 F.2d 38, 41 (1st Cir.1991). The First Circuit expressed no view as to liability, *id.* at 38, but held that Conservation Law and Watertown Citizens had failed to meet Article III standing requirements because "[t]he absence of plaintiffs from the majority of regions of the country in this case demonstrates the lack of 'concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" *Id.* at 43 (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 [1982] ).

## II. LEGISLATIVE HISTORY OF THE CITIZEN SUIT PROVISION OF CERCLA

The citizen suit provision of CERCLA provides in pertinent part:

Except as provided in subsections (d) and (e) of this section and in section 9613(h) of this title [relating to timing of judicial review], any person may commence a civil action on his own behalf—

(2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency and the Administrator of the Agency for Toxic Substances and Disease Registry) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, including an act or duty under section 9620 of this title (relating to Federal facilities), which is not discretionary with the President or such other officer.

42 U.S.C. § 9659(a)(2) (1988).

The Administrator argues that the phrase "on his own behalf" in this provision reflects an intent on the part of Congress to prohibit

---

the other motions are unnecessary and irrelevant and that they should be denied. (Opposition to Plaintiffs' and Intervening Plaintiffs' Motion for Class Certification ["Opposition to Class Certification"] at 3 n. 4.) During oral argument, Conservation Law and Watertown Citizens conceded that should their Motion to Certify Class Action be denied, the Motion to Intervene would be moot.

**2.** Complaint ¶ 7.

class actions under CERCLA.[3] Conservation Law and Watertown Citizens concede that while Congress intended that an action brought pursuant to the citizen suit provision would not be a class action *ipso facto*, it by no means intended to preclude the plaintiffs in a citizen suit from demonstrating that the separate standards of Fed.R.Civ.P. 23 had been met in a particular case which ought, accordingly, proceed as a class action.[4] The Court rules that the argument of the environmental groups is unpersuasive.

The citizen suit provision of CERCLA is modeled on the corresponding provisions of the Clean Air, Clean Water, and Solid Waste Disposal Acts. S.Rep. No. 11, 99th Cong., 1st Sess. 62 (1985). The words "on his own behalf," in addition to the entire citizen suit provision, originate in the Clean Air Act. S.Rep. No. 414, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 3668, 3745; *see also Natural Resources Defense Council v. Train*, 510 F.2d 692, 699 (D.C.Cir.1974). Thus, the citizen suit provisions of subsequent acts all have their origin in the Clean Air Act.

The earlier statutes, have to do with elements of nature, air and water, whereas the present statute—CERCLA—concerns hazardous waste. It may be a leap to say that Congress must have intended the same treatment of class actions in suits regarding hazardous waste as it did in clean air and clean water matters, but it is not much of a leap.

In *Northcross v. Board of Educ. of Memphis City Schools*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973), the Supreme Court held that similarity of language was a "strong indication" that two attorneys' fee statutes "should be interpreted *pari passu*."[5] Here, in addition to similar statutory language, the citizen suit provision of 42 U.S.C. § 9659 was modeled on the corresponding provision of the Clean Air and Clean Water Act. Given this legislative gloss, the common concern of the statutes with pollution, and the common purpose of each act in authorizing private citizens to sue on their own behalf, the court is persuaded that Congress specifically intended the two provisions on citizen suits to be interpreted the same way.

The Congressional purpose in enacting the Clean Air Act citizen suit provision was to authorize citizens to act as "private attorneys general." *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 17, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1980). Sponsors of the Clean Air Act were wary of the untrustworthiness or lack of will of federal environmental agencies[6] and the inevitable lack of resources for those agencies to address all statutory violations.[7] Senator Hart, for example, stated:

3. Opposition to Class Certification at 4–6.

4. Reply Memorandum in Support of Motion for Class Certification ("Reply Memorandum") at 5–6.

5. The citizen suit provision of the Clean Air Act, similar to the citizen suit provision of CERCLA, provides in relevant part:
   Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—
   (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator ...
   42 U.S.C. § 7604 (1988).

6. The Senate Report stated:
   Government initiative in seeking enforcement under the Clean Air Act has been restrained. Authorizing citizens to bring suit for violations of standards should motivate governmental agencies charged with the responsibility to bring enforcement and abatement proceedings.

S.Rep. No. 1196, 91st Cong., 2d Sess. 36–37, *reprinted in* Environmental Policy Division, Congressional Research Service, 1 A Legislative History of the Clean Air Act Amendments of 1970, at 436–37 (1974), *quoted in Natural Resources Defense Council v. Train*, 510 F.2d at 723.

7. Senator Muskie stated, during Senate Debate:
   I think it is too much to presume that, however well staffed or well intentioned these enforcement agencies, they will be able to monitor the potential violations of the requirements contained in all the implementation plans that will be filed under this act, all the other requirements of the act, and the responses of the enforcement officers to their duties.
   Citizens can be a useful instrument for detecting violations and bringing them to the attention of the enforcement agencies and the courts alike.
   Statement of Sen. Muskie, Sept. 21, 1970, *reprinted in* Environmental Policy Division, Congressional Research Service, 1 A Legislative History of the Clean Air Act Amendments of 1970, at 280–81, *quoted in Natural Resources Defense Council v. Train*, 510 F.2d at 727.

In legislation of this type, we will find very likely noncompliance which in number or degree are [sic] far beyond the capacity of the Government to respond to.... [O]ne of the frustrations across this country is the increasing number of our citizens who feel that Congress has made them a promise, but that there are no means of obtaining delivery on that promise.

The burden on the Department of Justice is so great that the agency cannot respond to it. To allow the citizen the right to sue on his own behalf may indeed increase the burden on the Federal courts. But this is not an adequate response to the frustrated citizen who seeks that right.

Statement of Sen. Hart, Sept. 22, 1970, *reprinted in* Environmental Policy Division, Congressional Research Service, 1 A Legislative History of the Clean Air Act Amendments of 1970, at 356–57, *quoted in Natural Resources Defense Council v. Train*, 510 F.2d at 730. "On his own behalf" establishes that a citizen plaintiff, while a "private attorney general," nevertheless does not, merely by virtue of filing suit under the statute in question, represent the public at large in the same sense that a state attorney general or the Department of Justice does when it brings an enforcement action. *See Natural Resources Defense Council v. Train*, 510 F.2d at 723–30.

Indeed, the legislative history of the citizen suit provision of the Clean Air Act and Clean Water Act reveals clearly that such provision is not to be taken as an authorization for a class action.

The section is drawn to avoid problems raised by class action provisions of the Federal rules of civil procedure, specifically by Rule 23. Section 505 does not authorize a "class action." Instead, it would authorize a private action by any citizen or citizens acting on their own behalf. Questions with respect to traditional "class" actions often involve: (1) identifying a group of people whose interests have been damaged; (2) identifying the amount of total damage to determine jurisdiction qualification; and (3) allocating any dam-

ages recovered. None of these points is appropriate in citizen suits seeking abatement of violations of water pollution control requirements. It should be noted, however, that the section would specifically preserve any rights or remedies under any other law. Thus, if damages could be shown, other remedies would remain available. Compliance with other requirements under this Act would not be a defense to a common law action for pollution damages.

1 A Legislative History of the Clean Air Amendments of 1970, at 438; S.Rep. No. 414, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3746–47. The environmental groups argue that this excerpt demonstrates only that Congress intended to eliminate the need for plaintiffs and courts to address the issues that arise in class actions, not that Congress intended to prohibit class actions outright.[8] As Conservation Law and Watertown Citizens see it, Congress sought to make clear only that a citizen suit, without more, is not an action on behalf of all affected persons.[9]

Congress clearly states, however, that the citizen suit provision of the Clean Air Act and Clean Water Act does not authorize a class action. Moreover, various portions of the Congressional debates support the same conclusion. When comparing the citizen suit provision of the Clean Air Act, Senate bill 4358, to Senate bill 3201, a consumers class action bill, the following was said—

[Senator] Muskie.... [t]his [S. 4358] is not a class action provision. I suggest that Senators read it.

Senate bill 3201, to which comparison was made by the Senator from Nebraska (Mr. Hruska) on yesterday, is a class action bill. S. 4358 is not. S. 4358 is limited to citizens acting on their own behalf.

1 A Legislative History of the Clean Air Amendments of 1970, at 351. Senator Muskie then submitted a memorandum which states, in part:

The provision in the bill S. 4358 providing for citizen suit bears little resemblance

---

**8.** Reply Memorandum at 7.

**9.** *Id.* at 7–8.

to the provision mentioned by Senator Hruska in the bill S. 3201.

S. 3201 provides for class action, such class required to meet the complex and difficult requirements of Rule 23 of the Federal Rules of Civil Procedures [sic]. S. 4358 is limited to citizens acting on their own behalf.

*Id.* at 352. The debate continued:

[Senator] Muskie. This does not require as class actions do, identification of the class or group before a suit is brought in the name of a class. This can be brought by an individual citizen. The court has authority to consolidate actions that might be taken by individual citizens.

[Senator] Cook. May I say that the opportunity for the court to consolidate actions has been a part of Federal rules of procedure for a long time. That is already in existence.

[Senator] Muskie. I understand. But the important distinction I want to make, if it is one—and I am told that it is—is that it is not necessary for a citizen to take advantage of this right to establish himself as a member of a class. He can bring suit as an individual citizen under this provision. . . .

*Id.* at 353–54. As is apparent from the foregoing debates, a right to class action is not conferred; class actions are not permitted under this provision of the Clean Air Act. To conclude otherwise would frustrate the policy that Congress sought to implement.

The citizen suit provision of the Clean Air Act includes a lengthy provision, entitled "Nonrestriction of other rights," which begins: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief. . . ." 42 U.S.C. § 7604(e) (1988). CERCLA has an analogous provision, which states that the citizen suit provision "does not affect or otherwise impair the rights of any person under Federal, State, or common law. . . ." 42 U.S.C. § 9659(h) (1988). The environmental groups assert that this provision permits them to bring a class action if they are able to meet the standards imposed by Fed.R.Civ.P. 23.

The rights granted in the "Nonrestriction of other rights" clauses in the Clean Air Act, Clean Water Act, and the savings clause in CERCLA refer to those conferred by statute or common law.

"It should be noted . . . that the [cognate section of the Clean Water Act] . . . specifically preserve[s] any rights or remedies under any other *law*. Thus, if damages could be shown, other remedies . . . remain available. Compliance with requirements under this Act [is] not a defense to a common law action for pollution damages."

1 A Legislative History of the Clean Air Amendments of 1970, at 438 (emphasis added). The same interpretation applies to the savings clause in the Clean Water Act. Although citizens may bring suits under the citizen suit provisions, the same individuals are not barred from bringing another suit under a different law or statute. *Cf. International Paper Co. v. Ouellette,* 479 U.S. 481, 497, 107 S.Ct. 805, 814, 93 L.Ed.2d 883 (1987) (Supreme Court held Clean Water Act did not bar aggrieved Vermont landowners from bringing nuisance claim. "The [Clean Water Act] precludes only those suits that . . . are incompatible with those established by the procedures set forth in the Act. The savings clause specifically preserves other state actions. . . ."). A motion for class certification is a procedural mechanism created pursuant to Fed.R.Civ.P. 23, a rule properly enacted pursuant to the Rules Enabling Act, 28 U.S.C. § 2072. Its provisions are binding upon the District Courts. Fed.R.Civ.P. 1. It is in every sense a law to which the savings clause would seem to apply.

### III. CASE LAW

While the legislative history would seem to demonstrate only that the citizen suit provision does not confer class action status and the savings clause appears to make class action status available to litigants properly situated, the case law is far more restrictive—courts appear with virtual unanimity to read the citizen suit provision as prohibiting class actions. *City of Evansville, Indiana v. Kentucky Liquid Recycling, Inc.,* 604 F.2d 1008, 1014 (7th Cir.1979) (in rejecting class action for damages, court notes that "legislative history of the [citizen suit] provision [of

the Clean Water Act] leaves little doubt that neither class actions nor actions for damages were contemplated"), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980); *Sierra Club v. Aluminum Co. of America,* 585 F.Supp. 842, 848 (N.D.N.Y.1984) (rejecting argument that the words "on his own behalf" in citizen suit provision of Clean Water Act precluded organizational standing, explaining that it was instead intended only to exclude class action); *Brown v. Ruckelshaus,* 364 F.Supp. 258, 264–65 (C.D.Cal. 1973) (rejecting class action allegation in reliance on statutory language and legislative history of Clean Water Act).[10]

■■■ Still, despite the virtual unanimity of decisional law to the contrary, this Court

is duty bound to follow the plain meaning of the language Congress has chosen to employ. That language appears to compel the following simple propositions: a) The citizen suit provision of CERCLA does not itself authorize the commencement of a class action; b) An individual citizen suing under the citizen suit provision retains, under the savings clause, all the rights provided her as a litigant under any other law; c) Federal Rule of Civil Procedure 23 is such a "law." Accordingly, this Court rules that, if appropriate, the proposed intervenors may maintain this case as a class action.[11]

■■■ Even though class action proceedings are theoretically possible in a CERCLA case,

---

10. Conservation Law and Watertown Citizens note one case, *Werlein v. United States,* 746 F.Supp. 887, 913 (D.Minn.1990), where a court has allowed a motion for class certification under the CERCLA citizen suit provision. The issue of statutory authorization *vel non* was, however, never discussed in *Werlein.*

11. Jurisdiction over this action is not predicated solely upon the citizen suit provision of CERCLA, 42 U.S.C. § 9659. Conservation Law and Watertown Citizens have also alleged federal question, 28 U.S.C. § 1331, and mandamus jurisdiction, 28 U.S.C. § 1361. Complaint ¶ 7. The plaintiff environmental groups throw out this anchor to windward fearing that this Court may join those other decisions that hold that the citizen suit provision of CERCLA precludes class actions. These alternative bases for jurisdiction permit class certification if Fed.R.Civ.P. 23 is satisfied. This Court must, therefore, consider whether either of these alternative bases for jurisdiction opens the courthouse doors for these plaintiffs should the Court be in error in ruling that the CERCLA citizen suit provision does not preclude class certification.

Section 1331 of chapter 28 of the United States Code provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1988). Here, the plaintiffs merely allege federal question jurisdiction; they fail to state what the federal question is.

Of course, Conservation Law and Watertown Citizens have brought this suit pursuant to the citizen suit provision of CERCLA, 42 U.S.C. § 9659. That section expressly provides a federal forum but it is in no sense an alternative basis for jurisdiction and the assumption that undergirds this footnote is that the citizen suit provision of CERCLA prohibits class actions. True, the intent of Congress in enacting federal question jurisdiction is to provide broad jurisdictional grant to federal courts, *Kois v. Breier,* 312

F.Supp. 19, 23 (E.D.Wis.1970) and a sympathetic and knowledgeable forum for the vindication of their federal rights. *Hunter v. United Van Lines,* 746 F.2d 635, 639 (9th Cir.1984), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). Neither the legislative history of § 1331 nor the case law interpreting it, however, supports the proposition that the grant of federal question jurisdiction itself expands rights otherwise expressly limited by specific federal law. If this is the plaintiffs' approach, it is unavailing.

Conservation Law and Watertown Citizens may be alleging that they have an independent basis for federal jurisdiction, not arising pursuant to the citizen suit provision of CERCLA with the limitations assumed here, but because an implied right of action exists for violation of CERCLA, independent of the express right of action granted by the citizen suit provision. The Supreme Court has precluded any such implied right of action. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1980). In *Middlesex,* the plaintiffs were precluded from bringing an action alleging damage to fishing grounds caused by discharges and ocean dumping of sewage and other wastes under the general jurisdictional grant in 28 U.S.C. § 1331. The Supreme Court held no implied right of action to exist under the Marine Protection, Research, and Sanctuaries Act of 1972 ("MPRSA") and the Clean Water Act. The Court examined, first, the statutory language, followed by a review of the legislative history of these acts. Since the citizen suit provisions establish a means to enforce these statutes, the Supreme Court held:

... [I]t cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under the Acts [MPRSA and the Clean Water Act]. As we stated in *Transamerica Mortgage Advisors[, Inc. v. Lewis] supra,* [444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ] "it is an elemental canon of statutory construction that

this case may not, consistent with the mandate of Rule 23, proceed as a class action. The reason is not hard to discern. Neither the claims of the various members of the purported class with respect to conduct at the approximately 840 federal waste sites nor the defenses of the Administrator with respect to such claims are sufficiently "common" to warrant class action treatment. One need go no further than the First Circuit's discussion in *Conservation Law Foundation, Inc. v. Reilly*, 950 F.2d 38, 41 (1st Cir.1991) to understand why, just as the plaintiffs in this case lack standing to obtain the sweeping relief they seek, so too do they lack in the aggregate that commonality of case-specific claim or defense that warrants class action treatment.

## IV. CONCLUSION

For the foregoing reasons, the Motion of Conservation, Law and Watertown Citizens to Certify Class Action is DENIED. The

where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." 444 U.S., at 19 [100 S.Ct. at 247]. *See also Touche Ross & Co. v. Redington, supra,* [442 U.S. 560] at 571–574 [99 S.Ct. 2479 at 2486–2488, 61 L.Ed.2d 82 (1979)]. In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate. *Id.* 453 U.S. at 14–15, 101 S.Ct. at 2623. The Court recognized the savings clause in the Clean Water Act to "preserve" remedies but expressed doubts as to whether the phrase "any statute" referred to the Clean Water Act itself. *Id.* at 15–16, 101 S.Ct. at 2623–2624. Furthermore, the Court held the legislative history to be in accord with the statutory language. *Id.* at 17, 101 S.Ct. at 2625.

Since the citizen suit provision of CERCLA was modeled on, among others, the provision in the Clean Water Act, this Court follows the standard provided by *Middlesex* and holds no implied right of action to exist under CERCLA. For the foregoing reason, the environmental groups cannot assert federal jurisdiction claiming the existence of an implied right of action under CERCLA.

The environmental groups have also alleged mandamus jurisdiction, 28 U.S.C. § 1361. Mandamus is an extraordinary remedy, available only in situations where government officials have clearly failed to perform nondiscretionary duties. *See Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir.1969), *cert. denied,* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). Moreover, mandamus is not available when an adequate alterna-

Motions to Intervene and Amend the Complaint are likewise DENIED as moot.

tive remedy exists. *See Ex parte Republic of Peru,* 318 U.S. 578, 584, 63 S.Ct. 793, 797, 87 L.Ed. 1014 (1943); *Richardson v. United States,* 465 F.2d 844, 849 (3d Cir.1972), *rev'd on other grounds,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Carter,* 411 F.2d at 773; *T M Systems, Inc. v. United States,* 473 F.Supp. 481, 485 (D.Conn.1979); *Loveladies Property Owners Ass'n, Inc. v. Raab,* 430 F.Supp. 276, 282 (D.N.J. 1975), *cert. denied,* 432 U.S. 906, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977).

In the present case, however, an adequate alternative remedy does exist. CERCLA itself provides a means for evaluating the actions of the Administrator "where there is alleged a failure ... to perform any act or duty under this chapter, including an act or duty under section 9620 of this title [relating to Federal facilities], which is not discretionary with the President or such other officer." 42 U.S.C. § 9659(a)(2). Indeed, Conservation Law and Watertown Citizens have asserted their right to bring suit under this very provision. While they may not be able to receive nationwide injunctive relief, each individual plaintiff can bring his or her suit pursuant to the citizen suit provision of CERCLA. Furthermore, if feasible, a court may consolidate these actions as was suggested by Senator Muskie. *See supra* at 176; *see also* 28 U.S.C. § 1407. "Where Congress establishes a statutory method for reviewing administrative action, as here, an aggrieved party cannot avoid compliance with the statutory process by bringing a mandamus action." *Raab,* 430 F.Supp. at 282; *accord Wilmot v. Doyle,* 403 F.2d 811, 816 (9th Cir.1968). Consequently, the attempt to invoke mandamus jurisdiction must fail.